**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| **JAMES T. WHITEHEAD** and **SHARON WHITEHEAD**, | § § § | **CIVIL ACTION NO. _____** |
| Plaintiffs, | § § | |
| | § | **CIVIL ACTION COMPLAINT** |
| v. | § § | |
| **AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in- interest to BUFFALO PUMPS; | § § § § | **JURY TRIAL DEMANDED** |
| **ASCO VALVE, INC.**; | § § | |
| **AURORA PUMP COMPANY**; | § § | |
| **BFK, INC.**, successor-in-interest to BUELL ENGINEERING CO.; | § § § § | |
| **BLACKMER PUMP COMPANY**; | § § | |
| **BW/IP, INC.**, individually and as successor-in-interest to BYRON JACKSON PUMPS; | § § § § | |
| **CARRIER CORPORATION**; | § § | |
| **CBS CORPORATION**, f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT; | § § § § § § § § | |
| **CHICAGO PNEUMATIC TOOL COMPANY LLC**; | § § § | |
| **COVIL CORPORATION**; | § § | |
| **CRANE CO.**; | § § | |
| **DANIEL INTERNATIONAL CORPORATION** f/k/a DANIEL CONSTRUCTION COMPANY, INC.; | § § § | |

**E.I. DU PONT DE NEMOURS AND COMPANY**;

**FISHER CONTROLS INTERNATIONAL LLC**, wholly owned subsidiary of EMERSON ELECTRIC COMPANY;

**FLOWSERVE CORPORATION**, individually and as successor-in-interest to ANCHOR/DARLING VALVE COMPANY;

**FLOWSERVE US INC.**, solely as successor to EDWARD VALVES CO. and ROCKWELL MANUFACTURING COMPANY;

**FLUOR CONSTRUCTORS INTERNATIONAL**, f/k/a/ FLUOR CORPORATION;

**FLUOR CONSTRUCTORS INTERNATIONAL, INC.**;

**FLUOR DANIEL SERVICES CORPORATION**;

**FLUOR ENTERPRISES, INC.**;

**FMC CORPORATION**;

**GARDNER DENVER, INC.**;

**GENERAL ELECTRIC COMPANY**;

**GOULDS PUMPS, INC.**;

**HAMON RESEARCH-COTTRELL, INC.**;

**INTERNATIONAL PAPER COMPANY**;

**ITT, LLC,** f/k/a ITT CORPORATION, ITT INDUSTRIES INC., ITT FLUID PRODUCTS CORP., HOFFMAN SPECIALTY MFG. CORP., BELL and GOSSETT COMPANY and ITT MARLOW;

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

2

JOHN CRANE, INC.;                              §
                                               §
McNALLY INDUSTRIES, LLC, successor-in-         §
interest to NORTHERN FIRE APPARATUS;           §
                                               §
METROPOLITAN LIFE INSURANCE                    §
COMPANY;                                        §
                                               §
PABST BREWING COMPANY, LLC;                    §
                                               §
STERLING FLUID SYSTEMS (USA) LLC,              §
f/k/a PEERLESS PUMPS CO.;                       §
                                               §
TACO, INC.;                                     §
                                               §
UNITED CONVEYOR CORPORATION;                   §
                                               §
VIKING PUMP, INC.;                              §
                                               §
WARREN PUMPS, LLC;                             §
                                               §
THE WILLIAM POWELL COMPANY;                    §
                                               §
YORK INTERNATIONAL CORPORATION;                §
                                               §
        Defendants.                            §


## CIVIL ACTION COMPLAINT

PLAINTIFFS, **James T. Whitehead** and **Sharon Whitehead**, sue the above-named

Defendants for compensatory and punitive damages, by and through their attorneys, Wallace and

Graham, PA, and hereby brings this Civil Action Complaint, and alleges:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties pursuant to 28 USC §1332 because the

amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest

and costs, and is between citizens of different states.

2.      This Court has personal jurisdiction over the Defendants because Defendants have a substantial connection to the State of North Carolina and have purposefully availed themselves of the privilege of conducting business in this State.  Plaintiffs' claims arise out of Defendants' business activities conducted within this State and/or directed at this State, including the sale or supply of asbestos and/or asbestos-containing products, within this State.

3.      Plaintiffs' claims against the Defendants' product manufacturers and sellers arise out of Defendants' efforts to serve directly or indirectly the market for their asbestos and/or asbestos-containing products in this State, either through direct sales or through utilizing an established distribution channel with the expectation that their products would be purchased and/or used within North Carolina.

4.      All of the named Defendants are foreign corporations whose substantial and/or systematic business in North Carolina caused injury to Plaintiffs in this State, which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute and the United States Constitution.

5.      Pursuant to 28 USC §1391 (2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

## PARTIES

6.      The Plaintiffs, James Whitehead and Sharon Whitehead, are citizens of the State of North Carolina where James Whitehead was exposed to asbestos during the course of his career.

7.      Defendant, **AIR & LIQUID SYSTEMS CORPORATION,** individually and as successor-in- interest to BUFFALO PUMPS, was and is a Pennsylvania corporation with its principal place of business in Pennsylvania.  At all times material hereto, AIR & LIQUID SYSTEMS CORORATION, individually and as successor-in- interest to BUFFALO PUMPS, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced,

4

repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Buffalo pumps. Plaintiffs' claims against AIR & LIQUID SYSTEMS CORORATION, individually and as successor-in- interest to BUFFALO PUMPS, arise out of this Defendant's business activities in the State of North Carolina.

8. Defendant, **ASCO VALVE, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, ASCO VALVE, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing ASCO valves. Plaintiffs' claims against ASCO VALVE, INC. arise out of this Defendant's business activities in the State of North Carolina.

9. Defendant, **AURORA PUMP COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois. At all times material hereto, AURORA PUMP COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Aurora pumps. Plaintiffs' claims against AURORA PUMP COMPANY arise out of this Defendant's business activities in the State of North Carolina.

10. Defendant, **BFK, INC.**, successor-in-interest to BUELL ENGINEERING CO., was and is a company incorporated under the laws of the State of Kentucky with its principal place of business in Kentucky. At all times material hereto, BFK, INC., successor-in-interest to BUELL ENGINEERING CO., mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or

5

asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Buell precipitators. Plaintiffs' claims against BFK, INC., successor-in-interest to BUELL ENGINEERING CO., arise out of this Defendant's business activities in the State of North Carolina.

11.     Defendant, **BLACKMER PUMP COMPANY**, was and is a company incorporated under the laws of the State of Michigan with its principal place of business in Michigan. At all times material hereto, BLACKMER PUMP COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Blackmer pumps. Plaintiffs' claims against BLACKMER PUMP COMPANY arise out of this Defendant's business activities in the State of North Carolina.

12.     Defendant, **BW/IP, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, BW/IP, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Byron Jackson pumps. Plaintiffs' claims against BW/IP, INC. arise out of this Defendant's business activities in the State of North Carolina.

13.     Defendant, **CARRIER CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Florida. At all times material hereto, CARRIER CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but

not limited to, asbestos-containing Carrier air compressors. Plaintiffs' claims against CARRIER CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

14.     Defendant, **CBS CORPORATION,** f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, CBS CORPORATION, f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Westinghouse and BF Sturtevant turbines and blowers. Plaintiffs' claims against CBS CORPORATION, f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT, arise out of this Defendant's business activities in the State of North Carolina.

15.     Defendant, **CHICAGO PNEUMATIC TOOL COMPANY LLC**, was and is a limited liability company organized under the laws of the State of Delaware with its principal place of business in South Carolina. After due diligence, Plaintiffs were able to confirm with the North Carolina Secretary of State that CHICAGO PNEUMATIC TOOL COMPANY LLC is composed of a sole member, Atlas Copco North America LLC., which is a citizen of the State of New Jersey. At all times material hereto, CHICAGO PNEUMATIC TOOL COMPANY LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing

7

products, materials, or equipment, including, but not limited to, asbestos-containing Chicago Pneumatic air compressor products. Plaintiffs' claims against CHICAGO PNEUMATIC TOOL COMPANY LLC, arise out of this Defendant's business activities in the State of North Carolina.

16. Defendant, **COVIL CORPORATION**, was and is a company incorporated under the laws of the State of South Carolina with its principal place of business in South Carolina. At all times material hereto, COVIL CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos-containing thermal insulation. Plaintiffs' claims against COVIL CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

17. Defendant, **CRANE CO.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material hereto, CRANE CO. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Crane valves, feed tanks, pumps, as well as asbestos-containing Barnes pumps, Cranite gaskets, Chapman valves, Chempump pumps, and Stockham valves. Plaintiffs' claims against CRANE CO arise out of this Defendant's business activities in the State of North Carolina.

18. Defendant, **DANIEL INTERNATIONAL CORPORATION** f/k/a DANIEL CONSTRUCTION COMPANY, INC., was and is a company incorporated under the laws of the State of South Carolina with its principal place of business in South Carolina. At all times material hereto, DANIEL INTERNATIONAL CORPORATION f/k/a DANIEL CONSTRUCTION COMPANY, INC., mined, manufactured, processed, imported, converted, compounded, supplied,

8

installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos-containing thermal insulation. Plaintiffs' claims against DANIEL INTERNATIONAL CORPORATION f/k/a DANIEL CONSTRUCTION COMPANY, INC., arise out of this Defendant's business activities in the State of North Carolina.

19. Defendant, **E.I. DU PONT DE NEMOURS AND COMPANY**, is a corporation organized under the laws of the State of Delaware with its principal place of business in Delaware. At all times material hereto, E.I. DU PONT DE NEMOURS AND COMPANY owned and/or controlled premises at which Plaintiff James Whitehead was exposed to asbestos-containing products and equipment and asbestos dust from said products at the E.I. Du Pont facilities in Kinston and Wilmington in North Carolina. Plaintiffs' claims against E.I. DU PONT DE NEMOURS AND COMPANY arise out of this Defendant's business activities in the State of North Carolina.

20. Defendant, **FISHER CONTROLS INTERNATIONAL, LLC,** wholly owned subsidiary of EMERSON ELECTRIC COMPANY, was and is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Missouri. After due diligence, Plaintiffs were able to confirm that FISHER CONTROLS INTERNATIONAL LLC lists three members, which are citizens of the States of Missouri, Minnesota and Iowa. At all times material hereto, FISHER CONTROLS INTERNATIONAL, LLC, wholly owned subsidiary of EMERSON ELECTRIC COMPANY, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Fisher valves. Plaintiffs' claims against FISHER CONTROLS

INTERNATIONAL, LLC, wholly owned subsidiary of EMERSON ELECTRIC COMPANY, arise out of this Defendant's business activities in the State of North Carolina.

21.     Defendant, **FLOWSERVE CORPORATION**, individually and as successor-in-interest to ANCHOR/DARLING VALVE COMPANY, was and is a company incorporated under the laws of the State of New York with its principal place of business in Texas.  At all times material hereto, FLOWSERVE CORPORATION, Individually and as successor-in-interest to ANCHOR/DARLING VALVE COMPANY, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Durco pumps and valves.   Plaintiffs' claims against FLOWSERVE CORPORATION, Individually and as successor-in-interest to ANCHOR/DARLING VALVE COMPANY, arise out of this Defendant's business activities in the State of North Carolina.

22.     Defendant, **FLOWSERVE US INC.,** solely as successor to EDWARD VALVES CO. and ROCKWELL MANUFACTURING COMPANY, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas.  At all times material hereto, FLOWSERVE US INC., solely as successor to EDWARD VALVES CO. and ROCKWELL MANUFACTURING COMPANY, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Edward valves and Rockwell valves.   Plaintiffs' claims against FLOWSERVE US INC., solely as successor to EDWARD VALVES CO. and ROCKWELL MANUFACTURING COMPANY, arise out of this Defendant's business activities in the State of North Carolina.

23.     Defendant, **FLUOR CONSTRUCTORS INTERNATIONAL,** f/k/a FLUOR CORPORATION, was and is a company incorporated under the laws of the State of California with its principal place of business in Texas.   At all times material hereto, FLUOR CONSTRUCTORS INTERNATIONAL, f/k/a FLUOR CORPORATION, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos-containing thermal insulation.   Plaintiffs' claims against FLUOR CONSTRUCTORS INTERNATIONAL, f/k/a FLUOR CORPORATION, arise out of this Defendant's business activities in the State of North Carolina.

24.     Defendant, **FLUOR CONSTRUCTORS INTERNATIONAL, INC.,** was and is a company incorporated under the laws of the State of California with its principal place of business in Texas.  At all times material hereto, FLUOR CONSTRUCTORS INTERNATIONAL, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos-containing thermal insulation.    Plaintiffs' claims against FLUOR CONSTRUCTORS INTERNATIONAL, INC. arise out of this Defendant's business activities in the State of North Carolina.

25.     Defendant, **FLUOR DANIEL SERVICES CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas.  At all times material hereto, FLUOR DANIEL SERVICES CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing

11

products, materials, or equipment, including, but not limited to, removal and installation of asbestos-containing thermal insulation. Plaintiffs' claims against FLUOR DANIEL SERVICES CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

26.    Defendant, **FLUOR ENTERPRISES, INC.**, was and is a company incorporated under the laws of the State of California with its principal place of business in California. At all times material hereto, FLUOR ENTERPRISES, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos-containing thermal insulation. Plaintiffs' claims against FLUOR ENTERPRISES, INC. arise out of this Defendant's business activities in the State of North Carolina.

27.    Defendant, **FMC CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, FMC CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Chicago pumps, Northern pumps and Peerless pumps. Plaintiffs' claims against FMC CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

28.    Defendant, **GARDNER DENVER, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Wisconsin. At all times material hereto, GARDNER DENVER, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but

12

not limited to, asbestos-containing Gardner Denver pumps. Plaintiffs' claims against GARDNER DENVER, INC. arise out of this Defendant's business activities in the State of North Carolina.

29. Defendant, **GENERAL ELECTRIC COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in Massachusetts. At all times material hereto, GENERAL ELECTRIC COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing General Electric turbines. Plaintiffs' claims against GENERAL ELECTRIC COMPANY arise out of this Defendant's business activities in the State of North Carolina.

30. Defendant, **GOULDS PUMPS, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, GOULDS PUMPS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Goulds pumps. Plaintiffs' claims against GOULDS PUMPS, INC. arise out of this Defendant's business activities in the State of North Carolina.

31. Defendant, **HAMON RESEARCH-COTTRELL, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, HAMON RESEARCH-COTTRELL, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing precipitator products. Plaintiff's claims

13

against HAMON RESEARCH-COTTRELL, INC. arise out of this Defendant's business activities in the State of North Carolina.

32.    Defendant, **INTERNATIONAL PAPER COMPANY**, is a corporation incorporated under the laws of the State of New York with its principal place of business in Tennessee. At all times material hereto, INTERNATIONAL PAPER COMPANY owned and/or controlled premises at which Plaintiff James Whitehead was exposed to asbestos-containing products and equipment and asbestos dust from said products at the Riegelwood Paper Mill in Leland, North Carolina. Plaintiffs' claims against INTERNATIONAL PAPER COMPANY arise out of this Defendant's business activities in the State of North Carolina.

33.    Defendant, **ITT, LLC**, f/k/a ITT CORPORATION, ITT INDUSTRIES INC., ITT FLUID PRODUCTS CORP., HOFFMAN SPECIALTY MFG. CORP., BELL and GOSSETT COMPANY and ITT MARLOW, was and is a company incorporated under the laws of the State of Indiana with its principal place of business in New York. After due diligence, Plaintiffs were able to confirm with the Indiana Secretary of State that ITT, LLC lists three principals, all of which are residents of New York. At all times material hereto, ITT, LLC, f/k/a ITT CORPORATION, ITT INDUSTRIES INC., ITT FLUID PRODUCTS CORP., HOFFMAN SPECIALTY MFG. CORP., BELL and GOSSETT COMPANY and ITT MARLOW, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Bell & Gossett pumps and valves. Plaintiffs' claims against ITT, LLC, f/k/a ITT CORPORATION, ITT INDUSTRIES INC., ITT FLUID PRODUCTS CORP., HOFFMAN SPECIALTY MFG. CORP., BELL and GOSSETT COMPANY and ITT MARLOW, arise out of this Defendant's business activities in the State of North Carolina.

34.     Defendant, **JOHN CRANE, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois. At all times material hereto, JOHN CRANE, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing John Crane gaskets and packing products. Plaintiffs' claims against JOHN CRANE, INC. arise out of this Defendant's business activities in the State of North Carolina.

35.     Defendant, **McNALLY INDUSTRIES, LLC**, successor-in-interest to NORTHERN FIRE APPARATUS, was and is a limited liability company organized under the laws of the State of Wisconsin with its principal place of business in New York. After due diligence, Plaintiffs were able to confirm with the Wisconsin Secretary of State that McNALLY INDUSTRIES, LLC is composed of a sole member, Arsenal HoldCo., LLC., which is a citizen of the State of Delaware. At all times material hereto, McNALLY INDUSTRIES, LLC, successor-in-interest to NORTHERN FIRE APPARATUS, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Northern pumps. Plaintiffs' claims against McNALLY INDUSTRIES, LLC, successor-in-interest to NORTHERN FIRE APPARATUS, arise out of this Defendant's business activities in the State of North Carolina.

36.     Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. METROPOLITAN LIFE INSURANCE COMPANY has done and does business in the State of North Carolina. METROPOLITAN LIFE INSURANCE COMPANY is named as a conspiracy defendant.

37.     Defendant, **PABST BREWING COMPANY, LLC**, is a limited liability company organized under the laws of the State of Delaware with its principal place of business in California. After due diligence, Plaintiffs were able to confirm with the California Secretary of State that PABST Brewing Company, LLC lists three members, which are residents of the States of California and Texas.  At all times material hereto, PABST BREWING COMPANY, LLC owned and/or controlled premises at which Plaintiff James Whitehead was exposed to asbestos-containing products and equipment and asbestos dust from said products at the Schlitz, later Stroh's Brewery in Winston-Salem, North Carolina. Plaintiffs' claims against PABST BREWING COMPANY, LLC arise out of this Defendant's business activities in the State of North Carolina.

38.     Defendant, **STERLING FLUID SYSTEMS (USA), LLC** f/k/a PEERLESS PUMPS CO., was and is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indiana.  After due diligence, Plaintiffs were able to confirm with the Indiana Secretary of State that STERLING FLUID SYSTEMS (USA), LLC lists two principals, all of which are citizens of Indiana.  At all times material hereto, STERLING FLUID SYSTEMS (USA), LLC f/k/a PEERLESS PUMPS CO., mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Peerless pumps.  Plaintiffs' claims against STERLING FLUID SYSTEMS (USA), LLC f/k/a PEERLESS PUMPS CO., arise out of this Defendant's business activities in the State of North Carolina.

39.     Defendant, **TACO, INC.,** was and is a company incorporated under the laws of the State of Rhode Island with its principal place of business in Rhode Island.  At all times material hereto, TACO, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-

containing products, materials, or equipment, including, but not limited to, asbestos-containing Taco pumps and heaters. Plaintiffs' claims against TACO, INC. arise out of this Defendant's business activities in the State of North Carolina.

40.     Defendant, **UNITED CONVEYOR CORPORATION**, was and is a company incorporated under the laws of the State of Illinois with its principal place of business in Illinois. At all times material hereto, UNITED CONVEYOR CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing ash hopper products. Plaintiffs' claims against UNITED CONVEYOR CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

41.     Defendant, **VIKING PUMP, INC.,** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Iowa. At all times material hereto, VIKING PUMP, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Viking pumps. Plaintiffs' claims against VIKING PUMP, INC. arise out of this Defendant's business activities in the State of North Carolina.

42.     Defendant, **WARREN PUMPS, LLC,** was and is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Massachusetts. WARREN PUMPS, LLC is composed of a sole member, IMO Industries, Inc., a Delaware corporation. At all times material hereto, WARREN PUMPS, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or

equipment, including, but not limited to, raw asbestos fibers and asbestos-containing Warren pumps. Plaintiffs' claims against WARREN PUMPS, LLC arise out of this Defendant's business activities in the State of North Carolina.

43.     Defendant, **THE WILLIAM POWELL COMPANY**, was and is a company incorporated under the laws of the State of Ohio with its principal place of business in Ohio. At all times material hereto, THE WILLIAM POWELL COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Powell valves. Plaintiffs' claims against THE WILLIAM POWELL COMPANY arise out of this Defendant's business activities in the State of North Carolina.

44.     Defendant, **YORK INTERNATIONAL CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Wisconsin. At all times material hereto, YORK INTERNATIONAL CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing York compressors. Plaintiffs' claims against YORK INTERNATIONAL CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

45.     Plaintiff James T. Whitehead experienced further occupational exposure as a result of working with asbestos-containing equipment in his immediate vicinity at his work site, the premises of Defendant E.I. DU PONT DE NEMOURS AND COMPANY, INTERNATIONAL PAPER COMPANY and PABST BREWING COMPANY, LLC (collectively, hereinafter the "Premises Defendants"). All other Defendants, (but for METROPOLITAN LIFE INSURANCE

COMPANY) manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials for use in North Carolina and other states at times relevant to this action. At all times relevant to this action, the Defendants and the predecessors of the Defendants for whose actions the Defendants are legally responsible, were engaged in the manufacture, sale, and distribution of asbestos-containing products and raw material.

## BACKGROUND FACTS

46.     Plaintiffs bring this action for monetary damages as a result of Plaintiff James Thomas Whitehead contracting an asbestos-related disease.

47.     Plaintiff was diagnosed with Mesothelioma on November 19, 2017.

48.     Plaintiff's mesothelioma was caused by his exposure to asbestos during the course of his employment.

49.     During his work history, Plaintiff was exposed to asbestos through his work as a sheet metal and maintenance mechanic.

50.     Plaintiff was exposed to Defendants' asbestos-containing products while employed at R J Reynolds Tobacco Company in Winston-Salem, North Carolina from approximately 1959 to 1964.

51.     Plaintiff was further exposed to Defendants' asbestos-containing products while employed at The Bahnson Company at various textile mill jobsites in North Carolina and South Carolina from approximately 1966 to 1967.

52.     Plaintiff was further exposed to Defendants' asbestos-containing products while employed through the Sheet Metal Workers Local #159 at various industrial jobsites in Greensboro, North Carolina from approximately 1967 to 1968. These jobsites included, but may not be limited to, the Marshall Steam Plant in Terrell, NC; DuPont in Kinston, NC; Riegelwood Paper Mill in Leland, NC; and DuPont in Wilmington, NC.

19

53.     Plaintiff was further exposed to Defendants' asbestos-containing products while employed at the Schlitz Brewery in Winston-Salem, North from approximately 1968 to 1982 and The Joseph Stroh Brewing Company a/k/a Stroh's Brewery in Winston-Salem, North Carolina from approximately 1982-1999.

54.     Plaintiff worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

**FIRST CAUSE OF ACTION**
**<u>DEFECTIVE DESIGN</u>**

55.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

56.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment, or, are otherwise jointly and severally liable due to their involvement in the underlying facts.

57.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment, to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment, came into use by Plaintiff or by coworkers who were working with asbestos-containing materials in close proximity to Plaintiff.

58.     Plaintiff worked with and/or was exposed to the asbestos and asbestos-containing materials, products or equipment, mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most or all of the exposure being within the State of North Carolina.

59.     Plaintiff was exposed to Defendants' asbestos and asbestos-containing materials, products or equipment, which exposure directly and proximately caused him to develop an illness known and designated as Mesothelioma.

60.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture, and sell products that were not unreasonably dangerous or defective and/or a duty to warn the Plaintiff and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

61.     Defendants knew, or should have known, that persons working around asbestos-containing products in their employment, would be exposed to asbestos in quantities that could cause mesothelioma.

62.     Plaintiff sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff's body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff would not know of such danger to his health.

63.     Plaintiff's illness and disability are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing

21

materials, products or equipment, were deleterious, poisonous, and highly harmful to Plaintiff's body, lungs, respiratory system, skin, and health.

64. Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment, into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the Defendants.

65. The relevant Defendants who were involved in manufacturing, designing and producing the asbestos-containing products herein had a duty to use reasonable care throughout the manufacturing process, including making sure the product is free of any potentially dangerous defect in manufacturing or design.

66. While non-asbestos alternative designs and formulations of the relevant products and equipment were available prior to when some or all of the Plaintiff's injurious exposure occurred, the relevant Defendants negligently failed to adopt a non-asbestos design and formulation during the pertinent times.

67. Under N.C. Gen. Stat. § 99B-6, the relevant Defendants are liable for inadequate design or formulation in that they qualify as manufacturers within the scope of the statute and they acted unreasonably in designing or formulating the product when there was a safer, practical, feasible, and otherwise reasonable alternative design or formulation.

68. During some or all of the pertinent times, asbestos-free product designs and formulations could have accomplished the same functions as the asbestos products.

69. Defendants were negligent and breached their duty of due care to Plaintiff by taking or failing to take the actions as previously alleged to avoid harm to the Plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design,

22

manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment placed by Defendants in the stream of commerce.

70.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment, and the resulting injuries and damages to Plaintiff were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

71.     Defendants acted unreasonably by continuing to use a known cancer-causing product, to-wit: asbestos.

72.     At the time the products left Defendants' control, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

73.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the Plaintiff developed Mesothelioma, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

74.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
## FAILURE TO WARN

75.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

76.     Under N.C. Gen. Stat. § 99B-5, the relevant Defendants are liable for negligent failure to warn and inadequate warning or instruction, in that they were each a manufacturer or seller of a product who acted unreasonably in failing to provide such warning or instruction.  The failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought.  At the time the relevant asbestos-containing products left the control of the relevant Defendant manufacturers or sellers, the products without an adequate warning or

23

instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

77. In the alternative, after the relevant asbestos-containing products left the control of the relevant Defendant manufacturer or sellers, the manufacturers or sellers became aware of or in the exercise of ordinary care should have known that the products posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

78. The relevant Defendants breached their duties and were negligent in the following acts and/or omissions:

(a) Failed to advise Plaintiff of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

(b) Failed or omitted to provide the Plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c) Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment, to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

(d) Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e) Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f) Did not recommend methods to reduce exposures;

24

(g)     After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform the Plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

79.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

80.     The Defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

81.     The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment, were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the Plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

82.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff developed an illness, to-wit: Mesothelioma.

83.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FOURTH CAUSE OF ACTION
## GROSS NEGLIGENCE; WILLFUL, WANTON, AND RECKLESS CONDUCT

84.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

85.     Plaintiff and others in his position worked in close proximity to the asbestos and asbestos-related materials used, sold or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

25

86.     The Defendants have known or should have known for decades of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products, were hazardous to the health and safety of the Plaintiff and others in the Plaintiff's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants. As a result, the Plaintiff has been severely damaged as is set forth below.

87.     The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure for many decades, thus denying Plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure.   Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)     failure to issue recall type letters to prior users;

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)     The intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

88.     The acts of the Defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of Plaintiff and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had

knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment, upon the body of human beings, including Plaintiff arid others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

89.     Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Plaintiff, Plaintiff therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

90.     The Defendants' above-described recurring conduct, acts, omissions, negligence, and impropriety included aggravating factors giving rise to a claim of punitive damages under Chapter 1D of the North Carolina General Statutes.

91.     Pursuant to N.C. Gen. Stat. § 1D-15(a), each Defendant is properly liable for punitive damages in this action in that Defendant is liable for compensatory damages and has committed one or more aggravating acts or omissions justifying an award of punitive damages, including without limitation, recurring acts of egregious and reckless behavior, and specific instances of willful and wanton conduct.

92.     The recurring conduct, acts, omissions, negligence, and impropriety of the Defendants were willful, wanton, malicious, and in reckless disregard for the rights and interests of the Plaintiff and justify an award of punitive damages.   Accordingly, Plaintiff demands judgment against Defendant for punitive damages in an amount to be determined at trial.

# FIFTH CAUSE OF ACTION
## CONSPIRACY
### (Against Defendant METROPOLITAN LIFE INSURANCE COMPANY)

93.     Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment to which Plaintiff James T. Whitehead was exposed, and such assistance by METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products and/or equipment by such manufacturers which proximately caused Plaintiff James T. Whitehead's illness, injuries, and/or disabilities.

94.     In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos.   METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

95.     Plaintiff James T. Whitehead's unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

96.     As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff James T. Whitehead from asbestos exposure was increased, and (ii) James T. Whitehead suffered the injuries previously described.

97.    In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff James T. Whitehead. Plaintiff seeks compensatory and punitive damages against METROPOLITAN LIFE INSURANCE COMPANY as a result.

## SIXTH CAUSE OF ACTION
## ALLEGATIONS AGAINST PREMISES DEFENDANTS

98.    Plaintiff James T. Whitehead worked at premises owned and/or controlled by the Premises Defendants at which he was exposed to asbestos products and dust from asbestos products.

99.    While present at the premises owned and/or controlled by the Premises Defendants, Plaintiff James T. Whitehead was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by the Premises Defendants who had the responsibility for such safeguards.

100.    Plaintiff would further show that Plaintiff James T. Whitehead's injuries and diseases were the result of intentional acts and/or omissions and/or negligence, gross negligence and malice in the use of asbestos at premises owned and/or controlled by the Premises Defendants. Premises Defendants failed to properly remove and/or abate said asbestos at their facilities during the time Plaintiff James T. Whitehead was working there.

101.     Plaintiff would show that Premises Defendants were negligent, grossly negligent and malicious, and committed certain intentional acts, all of which were the proximate cause of the disease and injuries resulting in mesothelioma from exposure to asbestos.

102.     In particular, Plaintiff would show that Premises Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff James T. Whitehead, and that such intentional acts and omissions proximately caused Plaintiff James T. Whitehead's disease and injuries.

103.     Specific intentional acts and acts constituting negligence, gross negligence and malice committed by Premises Defendants that proximately caused James T. Whitehead's injuries and disease include:

(a)     Failure to provide safe equipment for Plaintiff James T. Whitehead to use;

(b)     Failure to provide adequate safety measures and protection against deadly and life threatening asbestos dust, all despite Premises Defendants' knowledge of the extreme risk of harm inherent to asbestos exposure;

(c)     Failure to adequately warn Plaintiff James T. Whitehead of the inherent dangers of asbestos contamination;

(d)     Failure to maintain the ambient and environmental conditions of the premise in proper and safe condition;

(e)     Failure to follow and adhere to various states and U.S. Government statutes, regulations and guidelines pertaining to asbestos and the exposure to asbestos of individuals. Such failure constituted negligence per se at a minimum.

104.     Plaintiff would further show that Premises Defendants intentionally, knowingly, and/or due to negligence, gross negligence and malice, failed to ensure that individuals such as Plaintiff James T. Whitehead were protected from the inhalation of asbestos and asbestos fibers. Such actions proximately caused Plaintiff James T. Whitehead's injuries and illness.

105. Additionally, specific actions or omissions on the part of Premises Defendants that proximately caused Plaintiff James T. Whitehead's injuries and illness were:

(a) Attempting to remove asbestos dust in Plaintiff James T. Whitehead's workplace without taking adequate precautions for the protection of workers in the vicinity and/or in the premises generally;

(b) Failing to provide proper protective gear for individuals exposed to asbestos;

(c) Failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos;

(d) Failing to provide a proper and safe method for the use of asbestos and asbestos fibers;

(e) Failing to adhere to industry safe standards and other established measures to protect workers from harm; and

(f) Failing to adequately warn of the extreme risk of danger of inherent to asbestos exposure.

106. Premises Defendants demonstrated such an entire want of care as to establish that its acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff James T. Whitehead.

## DAMAGES

107. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

108. As a result of the development of asbestos related diseases, Plaintiff has suffered and sustained very serious injuries to his person, to wit: mesothelioma.

109. Plaintiff has further suffered great pain, extreme nervousness, and mental anguish as a direct result of the aforesaid injuries.

110. Plaintiff verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; that he has been forced to remove himself from his job due to his poor

health resulting in substantial lost wages and loss of earning capacity; and further, that his expected life span has been greatly shortened.

111.    Plaintiff alleges that as a result of the aforesaid illnesses, he has been forced to incur large amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

WHEREFORE, the Plaintiff verily believes he is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury of all claims so triable.

[THIS SPACE INTENTIONALLY LEFT BLANK]

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

A.  Award the Plaintiffs compensatory damages, in an amount to be determined at trial;

B.  Award the Plaintiffs punitive damages;

C.  Award the Plaintiffs pre-judgment and post-judgment interest and any other costs, expenses or fees to which the Plaintiffs may be entitled by law; and

D.  Award the Plaintiffs such other and further relief as is just and proper.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THESE ISSUES.**


Respectfully submitted,

*/s/ William M. Graham*
William M. Graham (NC Bar #17972)
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
704-633-5244
704-633-9434 (fax)
E-Mail: bgraham@wallacegraham.com

ATTORNEYS FOR PLAINTIFFS