UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHARON K. WHITEHEAD, Individually and as Executrix of the Estate of James T. Whitehead, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> AIR & LIQUID SYSTEMS CORPORATION, et al, <br><br> Defendants. | Civil Action No. 1:18-CV-00091 <br><br> **REPLY BRIEF IN SUPPORT OF FISHER CONTROLS' MOTION FOR SUMMARY JUDGMENT** |

Defendant Fisher Controls International LLC ("Fisher") respectfully submits this reply brief in support of its motion for summary judgment.

## ARGUMENT

### I. THE SUBSTANTIVE LEGAL STANDARD ON SUMMARY JUDGMENT.

To survive summary judgment, an asbestos plaintiff must forecast evidence of <u>actual asbestos exposure</u> linked to the moving defendant's product. *Young v. American Talc Co.*, 2018 WI 9801011, *2 (M.D.N.C. August 2, 2018). The plaintiff must also demonstrate that the defendant-specific asbestos exposure occurred with sufficient frequency, proximity and regularity to be considered causal, consistent with *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986). *Id. See also Smith v. 3M Company*, 2019 WL 1116718, at *3 (M.D.N.C., March 11, 2019).

Plaintiff has failed to satisfy either requirement stated above. First, there is no evidence any Fisher product at the Brewery had asbestos, or that Mr. Whitehead was ever exposed to asbestos from a Fisher product. Second, Plaintiff has not even

WBD (US) 49165543v1

Case 1:18-cv-00091-LCB-JLW   Document 350   Filed 04/29/20   Page 1 of 14

addressed the frequency/proximity/regularity elements as to Fisher. A careful review of the facts, together with consideration of the relevant case law, demonstrates that Fisher's motion should be granted.

**II.    PLAINTIFF HAS FAILED TO FORECAST EVIDENCE SATISFYING THE SUBSTANTIVE SUMMARY JUDGMENT STANDARD.**

   **A.  There is no Evidence of Actual Exposure.**

Plaintiff's stated goal was to link Fisher to asbestos-containing gaskets, packing and insulation at the Brewery (Dkt. 333, p. 1). However, she relies completely on facts concerning a particular type of valve - <u>high temperature steam valves</u> - without evidence that any Fisher valve at the Brewery was such a valve. Further, she ignores the facts that the Brewery had cold processes, and also used valves that did not contain asbestos. In short, she does not offer evidence, direct or indirect, from which a jury could draw proper inferences about Fisher products. Rather, she would have the jury speculate on multiple levels before it could conclude Whitehead was exposed to asbestos from Fisher products.

*Gaskets*. Plaintiff cites evidence that Whitehead removed asbestos gaskets from high temperature steam valves. (*See, e.g*. Dkt 333-3, 39:13-40:6). She also notes he worked on two particular brands of high temperature steam valves – Fisher was not one of those brands – and unknown other brands of such valves. (*Id*., 45:4-10). Even her broadest statement about Whitehead's valve work (Dkt 333, p. 3: "The valves Whitehead worked on had asbestos gaskets and packing and were insulated with asbestos.") pertains to valves "operating at high temperatures". (Dkt 333-3; 46:1-21). Yet it is undisputed that in addition to high temperature applications, some valves operated at low temperatures because the Brewery "had a lot of hot water lines, (and)

had a lot of cold water lines." (*Id.*, 87:10-87:12). Plaintiff has submitted no evidence that any Fisher valve at the Brewery was a high temperature valve.

Moreover, Plaintiff has not disputed other relevant facts, which reveal the additional levels of speculation a jury would have to engage in to reach her conclusion. First, some valves at the Brewery had no gaskets. (Dkt. 333-4, 68:12-16). Second, some valves did not have flanges (and thus had no flange gaskets), but were screwed or threaded into lines. (Dkt. 333-4, 130:24-131:3, Dkt. 333-3, 95:15-20). Third, the Brewery used non-asbestos gaskets as well as asbestos-containing ones. (Dkt. 333-4, 149:11-16). Yet, Plaintiff has offered no evidence that the Fisher valves at the Brewery had internal gaskets; or if they did, that they were asbestos-containing. As to flange gaskets (which Fisher never supplied, and did not require to contain asbestos for its valves to function), Plaintiff offers no proof that Fisher valves connected to piping via flanges (versus being welding or threaded), or, even assuming they were flanged, what gaskets the Brewery used to connect them.

Given the facts above, that Mr. Whitehead may have worked on "all brands" of valves[1] is meaningless, since not all valves had gaskets (or packing or insulation, as shown below). Likewise, the fact Mr. Draughn remembered Fisher by name does not cure the gaps in Plaintiff's argument; when asked about the four valve brands he remembered (Fisher, Anchor, Gardner-Denver and Powell[2]), he could only say "(m)aybe some of them was steam valves" and "some" were high temperature. (*Id.*,

---

[1] Testimony that Mr. Whitehead worked on all brands not only fails to address which valves at the Brewery had asbestos components, but it says little about exactly what he did, since not all valves had to be overhauled [Dkt. 333-4, 70:21-71:6] and Plaintiff has not identified which ones were overhauled.
[2] Draughn testified there were numerous other valve brands whose names he could not recall. (Dkt 315-1, 99:13-17).

- 3 -

WBD (US) 49165543v1

85:8-17). Mr. Draughn's testimony does not address whether Whitehead worked on a *Fisher* valve on a high temperature/steam line.

*Packing*. Plaintiff also has established that the co-workers believe *some* high temperature steam valves had asbestos packing. However, this testimony is not linked to Fisher. Dorsett stated only that high temperature pumps and two specific brands of valves (other than Fisher) utilized asbestos packing (Dkt. 333-3, 34:12-14, 46:17-21); Draughn did not assert Fisher valves had packing (with or without asbestos) and did not recall removing packing from Fisher valves. (Dkt 333-4, 86:10-13). To the contrary, Draughn said not all valves had packing, and that only approximately 10% of valves had packing that required work. (Dkt. 333-4, 74:11-14; 76:23-77:11; 85:22-23). It is also undisputed that "(packing) was Teflon in quite a few valves." (Dkt 333-4, 131:25-132:1).[3] There is no evidence Fisher valves at the Brewery had asbestos packing or that Whitehead ever worked with packing in any Fisher valve.

*Insulation*. Plaintiff argues that Whitehead removed insulation from some valves[4] generally and that asbestos-containing insulation was used in high-temperature applications. However, it is undisputed that the Brewery had cold processes as well as steam. Dorsett said non-asbestos forms of insulation were used at the Brewery, including "foam glass, fiberglass" and "(m)ost of the cold stuff had foam glass on it" (Dkt 333-3, 79:12-79:14). He added that whether a line was insulated at all depended on the kind of line. (*Id.*, 96:16-18). Draughn did not know what type of insulation was

---

[3] Fisher sold valves that had no packing and valves with non-asbestos containing Teflon packing. (Dkt. 315-3)

[4] There is no evidence all valves were insulated, and Mr. Draughn stated that valves themselves were usually not insulated - only the piping going to and from valves that might be insulated. (Dkt. 315-1, 71:7-14; 122:4-20).

- 4 -

WBD (US) 49165543v1

on cold applications. (Dkt 333-4, 58:16-19). Neither witness said Fisher valves were insulated, nor identified whether they were used on hot or cold applications.

Plaintiff misstates facts relating to insulation. First, with no supporting citation, she states that "(n)on-asbestos insulation was not available until the early-to-mid 1970s." (Dkt. 333, p. 15). This misses the mark because Plaintiff has offered no evidence that Whitehead was near any insulation work <u>before the 1980s</u>. Draughn started working with him in the 1980s and offered no testimony about what Whitehead did in his first stint at the Brewery in the early 1970s (Dkt. 333-4, 14:7-11); Dorsett started at the Brewery in 1982. (Dkt. 333-3, 12:8-11). Plaintiff's exhibits only identify Mr. Whitehead as having done forklift work in the 1970s. (Dkt. 333-8, p. 6-11). Plaintiff's assertion is also wrong: her own expert states that foam glass, the same insulation Dorsett said the Brewery used, "never contained asbestos." (Exhibit 5, Ay Dep., 45:11). Second, she claims that "Fisher does not contend that its valves could have functioned without insulation…". (Dkt. 333, p. 15). Actually, Fisher's initial brief and evidence stated that "Fisher valves have never required insulation to function properly." (Dkt 315, p. 6; Dkt 315-3, ¶ 6.). Plaintiff has not disputed that fact as required by LR 56.1(d) (opposing party must "point to specific, authenticated facts existing in the record or set forth in accompanying affidavits that show a genuine issue of material fact).[5]

Plaintiff also has not disputed that Fisher had nothing to do with insulation, asbestos-containing or not. (*See* Dkt 315-3, Ex. 3, ¶ 6). Thus, even if Plaintiff had

---

[5] Plaintiff asserts the United States Supreme Court has identified "situations that give rise to a conclusion that a product required asbestos," citing *Air & Liquid Sys. Corp v. DeVries*, 139 S.Ct. 986 (2019). (Dkt. 333, p 14). Fisher respectfully submits that the quoted passage identifies when a legal duty may arise, and has nothing to do with when a valve may need asbestos.

- 5 -

WBD (US) 49165543v1

Case 1:18-cv-00091-LCB-JLW   Document 350   Filed 04/29/20   Page 5 of 14

proof that Whitehead was exposed to insulation on Fisher valves, it would be irrelevant as a matter of law.

Fisher cannot be held liable for a product made by another, where Whitehead's work occurred in the 1980s or later, after North Carolina adopted its products liability statute; under N.C. Gen. Stat. § 99(b), the focus is on *the product put in the stream of commerce by the defendant*. (*See* discussion at Dkt. 315, p. 8-9). Thus, it would be inappropriate to rely on *Air & Liquid Sys. Corp v. DeVries*, 139 S.Ct. 986 (2019) as Plaintiff advocates. Moreover, *DeVries* cited maritime law's "special solicitude for the welfare" of sailors, a consideration not present here. The best approach is that of the *Restatement (Third) of Torts*: Prods. Liab. § 5 (1998). It limits a component product manufacturer's liability to harm caused by the manufacturer's own product. Restatement Comment a adds:

> As a general rule, component sellers should not be liable when the component itself is not defective as defined in this Chapter. If the component is not itself defective, it would be unjust and inefficient to impose liability solely on the ground that the manufacturer of the integrated product utilizes the component in a manner that renders the integrated product defective. Imposing liability would require the component seller to scrutinize another's product which the component seller has no role in developing. This would require the component seller to develop sufficient sophistication to review the decisions of the business entity that is already charged with responsibility for the integrated product.

Second, *DeVries* does not assist Woolard. *DeVries* imposed a duty where the product <u>required</u> an asbestos-containing part. *Id.*, at 995-6. Fisher valves did not require asbestos-containing parts. (Duimstra Aff., ¶¶3-6)[6].

### B. There is No Evidence of Frequency, Proximity or Regularity.

---

[6] The parties' debate has also extended to the issue of replacement gaskets and packing. However, this issue is moot, as Plaintiff has offered no evidence Fisher ever supplied replacement parts to the Brewery. An owner of a Fisher valve could get replacement parts from sources other than Fisher (Dkt 315-3, ¶7).

The facts discussed above relate to whether Mr. Whitehead had "actual exposure" to asbestos on account of Fisher. He did not. Moreover, Plaintiff has made no attempt to establish the duration of Whitehead's "exposure" to any Fisher valves (i.e. any of the *Lohrmann* "frequency/proximity/regularity" factors), whether asbestos-containing or not.

First, there is no evidence quantifying the number of Fisher valves at the Brewery in any way; Dorsett never mentioned Fisher and Draughn simply identified Fisher as one of many brands of valve there. While a specific number may not be essential, Plaintiff also has submitted no evidence as to whether Fisher valves were prevalent or not, or what proportion of all valves Fisher accounted for, or even when Fisher valves were installed at the Brewery. Additionally, Dorsett could not identify how much Whitehead worked on any particular brand of valve, while Draughn testified "there wasn't much valve work to be done" and acknowledged he could not even recall actually seeing Mr. Whitehead do valve work. (Dkt. 333-3, 47:10-25, 98:19-99:6; Dkt 333-4, 92:10-19; 71:25-72:2: 131:10-15).

Further, the vast majority of what Plaintiff cites for purported valve "exposure" is flange gasket work. (*See*, Dkt. 333-4, 68:6-16, Dkt. 333-3, 105:9-13; *see also* Dkt. 333-4,123:19-124:12 (80-90 percent of valve work simply replacing a valve); 154:7-14 (employees did "more replacing valves than overhauling them.")). Fisher did not supply that product and its valves did not require asbestos-containing flange gaskets to function properly. (Dkt. 315-3, ¶4).

Plaintiff cites the reports of Edwin Holstein and Charles Ay and includes a section heading stating "Plaintiff has presented evidence that Whitehead's exposure to

- 7 -

asbestos from Fisher's asbestos-containing valves was a substantial factor in causing his mesothelioma." [Dkt 333, p. 15]. Not so! Holstein's report mentions Fisher <u>once</u> – noting only that Grady Draughn recalled Fisher valves at the Brewery (Dkt 333-5, p. 9) – while Ay did not mention Fisher at all. Their reports offer no opinions specific to Fisher and the only causation opinion is expressed by Holstein, who asserts that Whitehead's illness was caused by cumulative asbestos exposure. However, the issue here goes beyond whether Whitehead had an asbestos-related disease; it is whether there is evidence he (1) had <u>actual asbestos exposure</u> from Fisher valves, and, if so, (2) whether that Fisher-specific exposure was a substantial factor in causing his disease. Neither Ay nor Holstein addressed these questions. There is no proof of "exposure to asbestos from Fisher's" products (to paraphrase Plaintiff) and no attempt by the experts to address the *Lohrmann* factors as to any defendant.

Plaintiff advocates a relaxed causation standard for mesothelioma cases. This Court rejected this argument in *Connor v. Norfolk Southern Railway Company,* 2018 WL 6514842, *3, n. 5 (M.D.N.C. Dec. 11, 2018). Second, this contention has no application as to the initial exposure threshold; North Carolina expressly requires proof of actual exposure. *See Young*, *supra*, at *2.

Precisely what Plaintiff claims is adequate proof of causation is unclear. At page 11 of her brief she cites cases of "relatively brief" exposures satisfying *Lohrmann*[7]. However, these cases do not assist Plaintiff because they all involved far more substantial exposure than one can even speculate Whitehead experienced. Perhaps the *least* exposure in any of these cases was in *Tragarz v. Keene Corp.*, 980

---

[7] One case Plaintiff cites, *Purcell v. Asbestos* Corp*., Ltd*., 959 P. 2d 89 (Or. App. 1998) is inapplicable because Oregon rejected *Lohrmann* in favor of a lesser standard of proof. *Id.*, at 94.

- 8 -

F.2d 411, (7th Cir. 1992) where "the record is also replete with evidence with regard to the substantial amounts of dust that covered sheet metal workers, like Mr. Tragarz, who worked alongside insulators and pipefitters who were cutting, gouging, and installing asbestos insulation. All this indicates that whatever the frequency or regularity of Mr. Tragarz's exposure to Kaylo products, these exposures were intense."

Plaintiff also claims *Jones v. Owens-Corning Fiberglas Corp.,* 69 F.3d 712, 716 (4th Cir. 1995), *Slaugher v. Southern Talc Co.,* 949 F.2d 167, 171 (5th Cir. 1991), and *Roehling v. National Gypsum Co. Gold Bond Building Prods.,* 786 F.2d 1225 (4th Cir. 1986) support her position. The facts of those cases show otherwise; each rested on proof of asbestos exposed tied to the specific defendant. In *Jones*, there was proof the claimants "were exposed to (defendant's product) on a regular basis for more than 20 years." 69 F. 3d at 718. In *Slaughter*, a Fifth Circuit case, the plaintiff was allowed to proceed against one defendant [OCF] because there was proof its product had asbestos, was omnipresent in the worksite, and that plaintiff worked near it. 949 F. 2d at 171-172. Summary judgment was affirmed for a second defendant, STC because plaintiff could not show whether or not the specific product it provided to the worksite contained asbestos – as is the case here as to Fisher. *Id*., at 170-1. In *Roehling*, there was also proof, unlike our case, that plaintiff inhaled dust from the defendant's asbestos-containing product.

Our case cannot be meaningfully distinguished from *Young* and *Smith, supra*, *Jandreau v. Alfa Laval U.S. Inc.*, 2012 WL 2913776 (E.D. Pa.) or *Pace v. Air & Liquid Sys. Corp.*, 642 F. App'x 244, 247 (4th Cir. 2016), all of which Fisher has discussed here or in its initial brief. In each of those cases, summary judgment was

granted, even where there was proof a claimant worked with the defendant's product in some instances, either because, as in our case, plaintiff failed to demonstrate that the particular product at issue had asbestos or failed to satisfy the frequency/proximity/regularity factors.

In summary, Plaintiff has no proof that Whitehead had actual asbestos exposure on account of Fisher. Even if she had forecast such evidence, she cannot – and indeed has not tried to - identify the frequency, duration and proximity of any work with *asbestos-containing* Fisher valve components. Plaintiff must develop "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Pace supra* 642 Fed. App'x at 247–48. Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Blackmon v. G.UB.MK Constructors*, 2016 WL 8674646, *2 (E.D.N.C. Nov. 11, 2016). Yet that is all Plaintiff has in the end. Based on the record before the Court, Fisher's motion should be granted.

### III. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF REPOSE.

Fisher's initial brief addressed the sole argument Plaintiff offers as to the statute of repose. Accordingly, Fisher renews that part of its motion but will not further address it.

### IV. THERE ARE ADDITIONAL REASONS THE COURT SHOULD DISMISS SPECIFIC CLAIMS OF THE PLAINTIFFS.

Fisher has articulated alternative reasons why certain claims of Plaintiff should be dismissed. These alternative bases assume for the sake of argument that Plaintiff

- 10 -

WBD (US) 49165543v1

Case 1:18-cv-00091-LCB-JLW   Document 350   Filed 04/29/20   Page 10 of 14

can prove Whitehead was exposed to asbestos from Fisher valves (a matter refuted above) and require that Plaintiff come forward with proof that when Fisher sold any asbestos containing product at issue, it knew or should have know the product was a hazard (and, additionally as to punitive damages, that gaskets or packing would likely cause harm but intentionally disregarded or was indifferent to that risk).

In opposing Fisher's arguments, Plaintiff has not provided evidence of what Fisher knew about asbestos gaskets or packing when it sold any valve used at the Brewery (and of course she has no proof any asbestos-containing Fisher valve was there). Knowledge of the hazards of asbestos *generally*, in forms different than the components Fisher sold, is not relevant. *See*, *Lee v. CertainTeed Corp.,* 2015 WL 4526165, at *11 (E.D.N.C. July 27, 2015) (general knowledge that asbestos may have been harmful under unspecified circumstances is not enough to show that (a defendant) "knew the probable consequences, but was recklessly, wantonly or intentionally indifferent to the results."). Plaintiff has offered no proof about when any Fisher valve was sold to the Brewery, what the components were made of. Beyond this, Plaintiff simply provides general citations to articles without refences to what in them is supposedly relevant. The only one specific to gaskets or packing is Plaintiff's exhibit 22, a 1965 article which mentions asbestos gaskets but provides no criticism of them in particular. Fisher respectfully submits that if its motion is not granted in its entirety, the Court should dismiss the second and fourth causes of action for the reasons identified in its first brief.

## CONCLUSION

For the reasons set forth above, Fisher respectfully requests that the Court grant its motion and dismiss Fisher.

This the 29th day of April, 2020.

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ M. Elizabeth O'Neill*
M. Elizabeth O'Neill
NC State Bar No. 50338
Kimberly Sullivan
NC State Bar No. 23480
301 S. College Street, Ste. 3500
Charlotte, NC 28201
Telephone: (704) 350-6310
Telephone: (704) 444-2329
Elizabeth.Oneill@wbd-us.com
Kimberly.Sullivan@wbd-us.com
WBD.SCASBESTOS@wbd-us.com

*Attorneys for Defendant Fisher Controls International, LLC*

- 12 -
WBD (US) 49165543v1

Case 1:18-cv-00091-LCB-JLW   Document 350   Filed 04/29/20   Page 12 of 14

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), I hereby certify that, according to the word count function of Microsoft Word 2010, this reply brief contains fewer than 3125 words. This includes the body of the reply brief, headings, and footnotes, excluding case caption, any index, table of contents, table of authorities, signature block or required certificates.

Dated this 30th day of April, 2020.

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ M. Elizabeth O'Neill*
M. Elizabeth O'Neill

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on this day, I electronically filed the foregoing ***Reply Brief in Support of Motion for Summary Judgment of Defendant Fisher Controls International LLC*** with the Clerk of the United States District Court for the Middle District of North Carolina using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated this 29th day of April, 2020.

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ M. Elizabeth O'Neill*
M. Elizabeth O'Neill