IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
File No.: 1:18-cv-00091

| | |
|---|---|
| Sharon Whitehead, Individually and as Executor of the Estate of James T. Whitehead,<br><br>    Plaintiff,<br><br> vs.<br><br>Air & Liquid Systems Corporation, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY BRIEF OF DEFENDANT THE AURORA PUMP COMPANY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Aurora respectfully files this reply brief in support of its motion for summary judgment.

**ARGUMENT**

**I. ALL CLAIMS SHOULD BE DISMISSED AS PLAINTIFF HAS NOT PRODUCED EVIDENCE OF ACTUAL ASBESTOS EXPOSURE ATTRIBUTABLE TO AURORA.**

"[T]o survive summary judgment, Plaintiff must show that the record contains sufficient facts for a reasonable juror to conclude that the Decedent was actually exposed to [Aurora] attributable asbestos as required by *Wilder*, and that this exposure occurred with sufficient frequency, regularity, and proximity to satisfy *Lohrmann*." *Young v. Am. Talc Co.*, No. 1:13CV864, 2018 WL 9801011, at **3-4 (M.D.N.C. Aug. 2, 2018). Instead of coming forward with evidence of Mr. Whitehead's actual work with asbestos-containing Aurora pumps, Plaintiff attempts to survive summary judgment with generic references to pump work and broad assertions about Aurora's products to attempt to

establish those pumps were asbestos-containing. There is no evidence from which a reasonable jury could determine Aurora's products caused Mr. Whitehead's injuries, and Aurora is entitled to judgment as a matter of law.

"[T]he mere proof that the plaintiff and a certain asbestos product are at the [same location] at the same time, without more, does not prove exposure to that product." *Lohrmann*, 782 F.2d at 1162. Indeed, this Court has granted summary judgment where a plaintiff "was unsure whether (the product at issue) contained asbestos" and found the evidence "too vague and speculative to satisfy plaintiff's burden of demonstrating" he "was actually exposed to asbestos-containing products for which [the defendant] is responsible." *Smith v. 3M Co.*, No. 1:16CV379, 2019 WL 1116718, at *4 (M.D.N.C. March 11, 2019); *Young*, 2018 WL 9801011 at **4-6 (granting summary judgment because while the plaintiff demonstrated "some actual exposure," her evidence was insufficient to show frequent, regular, proximate exposure and was "simply too vague to create a genuine issue for trial"); *see also Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 315 n.3 (4th Cir. 2001) (holding "vague" deposition testimony "insufficient to create a genuine issue of material fact").

Plaintiff's argument requires the stacking of multiple inferences to make her case against Aurora:

- Because there were Aurora pumps in the Brewery, they must have contained asbestos gaskets and packing;
- Because Mr. Whitehead worked generally on pumps, he must have worked on the allegedly asbestos-containing components in Aurora pumps;

2

- Because he worked at the Brewery for an extended period of time, he must have worked on the asbestos-containing components within Aurora pumps with sufficient frequency, regularity, and proximity.

None of these inferences is supported by the record.

Plaintiff argues "Aurora sold virtually all of its pumps with asbestos-containing gaskets and packing." (Doc. 331, p. 6). The record evidence is the opposite. As Aurora Pump's corporate representative has explained, "Aurora Pump builds custom products." (Exhibit 1, Franklin Depo. 7/8/08, at 19:25-20:6.) Every pump is "manufactured specifically for a certain order . . . and manufactured for that user." (*Id.*) Plaintiff's attempts to take testimony about certain of Aurora's naval pumps and convert it to application for a brewery, *see* Doc. 331-9 at 2, does not pass muster. The customer specifications, unique to each pump order, would "have told [Aurora] what to use" with respect to "whether an Aurora pump contained asbestos packing or asbestos gaskets. (Ex. 1 at 15:25-16:7; Exhibit 2, Starke Depo. 12/19/95, at 22:14-17 (explaining they bought packing "based on customers' requirements").) Some pumps, from "inception," were manufactured entirely "asbestos free," (Ex. 1 at 40:13-2.), and each of the "product line[s]" sold by Aurora all had the capacity to be manufactured with non-asbestos "mechanical seals." (Ex. 2 at 30:2-20; Doc. 331-11 at 43:15-18 (explaining any of the types of Aurora pumps could handle "higher-temperature applications").)

As a result, Plaintiff cannot rely on general testimony to prove the Aurora pumps at issue were asbestos-containing, and she makes no attempt to demonstrate the Aurora pumps actually provided to the Brewery contained asbestos. The sales records attached to her Opposition do not carry the day. At best, this shows a total sale of ten seals, four

3

sets of packing rings, and 20 total gaskets over a ten-year time period – most of which occurred *before* Mr. Whitehead began working at the Brewery. (Doc. 331-13.) Plaintiff has not provided the court with the requisite analysis to demonstrate any of these pumps were asbestos-containing, but even if they were, testimony from the co-workers shows no connection between Mr. Whitehead and these few potentially asbestos-containing components in the Aurora pumps at the Brewery:

| **Plaintiff's Assertion** | **Actual Testimony** |
|---|---|
| <div align="center">Dorsett</div> ||
| "Dorsett witnessed Whitehead doing pump overhauls on Aurora pumps, including on high temperature pumps." (Doc. 331 at 2-3 (citing Doc. 331-3 at 33,36)) | "I can't say how many times because it was a lot of different pumps and I can't say how many times, no. . . ." (Doc. 331-3 at 36) |
| "Whitehead would have worked on a lot of such pumps" – implying "such pumps" are Aurora pumps (Doc. 331 at 3) | "We had a lot. In other words, like, on Vikings we had a lot of pumps." (Doc. 331-3 at 36:20-21) |
| <div align="center">Draughan</div> ||
| "Pumps they worked on included Aurora" (Doc. 331 at 5) | Did not work the same shift as Whitehead. Specifically testified that "I don't know 100 percent" that Whitehead worked on Aurora pumps, and "I can't swear" to removing gaskets from an Aurora pump. (Doc. 331-4 at 47, 49). |
| Descriptions of work with asbestos packing. (Doc. 331 at 2-5) | Cannot say the packing Whitehead and he worked on contained asbestos (Doc. 331-4 at 32:5-6) |

This type of fact testimony was rejected by the court in *Young*. In *Young*, the plaintiff cited to the testimony of several individuals, who provided similar, generic descriptions about the decedent's work on the GE products at issue. 2018 WL 9801011, at **5-6. In total, the court determined the decedent was potentially exposed to GE-attributable asbestos on thirteen specific instances but that Plaintiff "fail[ed] to establish the length of these exposures." *Id.* at *6. "Without these missing facts, Plaintiff's

evidence shows that the Decedent was exposed to asbestos on fewer occasions than the plaintiff in *Lohrmann*, and this showing is insufficient to establish causation as to GE." *Id.* Plaintiff's efforts to link Aurora here lead to the same conclusion. She cannot establish how often Mr. Whitehead may have worked on an Aurora pump; she cannot establish how long those work efforts lasted, and she cannot establish the frequency with which Mr. Whitehead worked on an Aurora pump. Summary judgement is appropriate because "[p]laintiff's recitation of the facts is replete with references to work around [pumps] for which Plaintiff provides no evidentiary connection with [Aurora]." *Id.*

Since she cannot meet her burden with Aurora-specific factual evidence, Plaintiff attempts to prove specific causation by proffering Dr. Holstein, who opines Mr. Whitehead's "multiple asbestos exposures cumulatively constituted the direct and sole cause of his bilateral calcified and non-calcified pleural plaque." (Doc. 331 at 8.) This "each and every exposure" theory has been rejected to prove specific causation. *Lindstrom v. A-C Prod. Liab. Tr.,* 424 F.3d 488, 493 (6th Cir. 2005) (if a court were to allow testimony about the every exposure theory, it would permit the imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion); *Anderson v. Ford Motor Co.,* 950 F. Supp. 2d 1217, 1223-24 (D. Utah 2013) (finding that this would imply specific causation regardless of the dose of the exposure or the type of fiber the individual was exposed to); *see also Yates v. Ford Motor Co.,* 113 F. Supp. 3d 841, 846 (E.D.N.C. 2015). An expert opinion based upon evidentiary assumptions is not a substitute for proving actual defendant-specific exposure under the *Lohrmann* standard.

5

Similarly, Plaintiff attempts to use the opinions of Charles Ay as a substitute for exposure evidence. (Doc. 331 at 9.) Mr. Ay's opinions cannot carry the day. First, there is nothing to suggest that Ay is familiar with any gasket or packing on an Aurora pump, has ever been to the Brewery, or has even worked in any brewery. His conclusory opinions are complete guesswork based upon speculation regarding exposure, and as such cannot save Plaintiff's claims against Aurora.

Finally, Plaintiff advocates a relaxed exposure standard for mesothelioma cases, (Doc. 331 at 10-14), which has been rejected by this Court. *Connor v. Norfolk Southern Railway Company,* 2018 WL 6514842, at *3 n.5 (M.D.N.C. Dec. 11, 2018). Furthermore, this contention has no application as to the initial exposure threshold as North Carolina expressly requires proof of actual exposure. *See Logan*, supra, at *4. Courts have also rejected Plaintiff's reliance on the alleged "consensus of the scientific community" arguments, (Doc. 331 at 11). *Lohrmann*, 782 F.2d at 1162; *Smith v. Kelly-Moore Paint Co., Inc.*, 307 S.W.3d 829, 839 (Tex. Ct. App. 2010); *Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 542, n.20, 544 (Ga. App. 2011).

In summary, there is no evidence about the frequency, regularity or proximity of work Whitehead performed on Aurora pumps, let alone asbestos-containing Aurora pumps. Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Blackmon v. G.UB.MK Constructors*, 2016 WL 8674646, *2 (E.D.N.C. Nov. 11, 2016); *see also Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (noting that a non-moving party must rely on more than "conclusory allegations, mere speculation, the building of one inference upon another, or

the mere existence of a scintilla of evidence"). Even assuming the Aurora pumps at issue contained asbestos, there is no testimony sufficient to prove asbestos exposure attributable to an Aurora pump, let alone on the frequent, regular, and proximate basis required under *Lohrmann*. *Young*, 2018 WL 9801011 at **3-4.

## II. PLAINTIFF'S BREACH OF WARRANTY CLAIM SHOULD BE DISMISSED

In a bare-bones argument, Plaintiff tries to survive summary judgment on her breach of warranty claim by arguing: "the fact that the product contained a known carcinogen at the time of sale renders it per se defective, or at least creates a genuine issue of material fact on this issue." (Doc. 331 at 17). This is not sufficient for a claim under N.C. Gen. Stat. § 25-2-314, which requires proof that the goods did not comply with the warranty in that the goods were defective [unfit for their ordinary purpose] at the time of sale." *See Cockerham v. Ward,* 44 N.C. App. 615, 624-25, 262 S.E.2d 651, 658 (1980). There is no "per se defective" theory of liability applicable to such a claim. Plaintiff is unable to establish any element of her case under a breach of implied warranty theory, and the claim must be dismissed.

## III. PLAINTIFF'S WILLFUL AND WANTON CONDUCT CLAIM SHOULD BE DISMISSED

Plaintiff has not established any evidence of willful and wanton conduct warranting an award of punitive damages. Plaintiff argues: "The evidence would easily allow a reasonable factfinder to conclude that, prior to and during Whitehead's exposure to asbestos from <u>insulation supplied by Aurora</u>, Aurora was aware of the dangers posed by the use and manipulation of asbestos-containing <u>insulation</u> and that in not warning or

7

using alternative materials, Aurora acted consciously and intentionally disregarded Whitehead's rights and safety." (Doc. 331 at 18 (emphasis added).) Aurora did not supply <u>insulation</u> to the Brewery, therefore the entire premise of Plaintiff's argument fails.

Plaintiff next contends: "Aurora continued to sell asbestos pumps, without a warning, long after it knew it could cause death and even years after the OSHA asbestos regulations were enacted." (*Id*.) First, while Plaintiff touts that Aurora acted improperly "years after the OSHA asbestos regulations were enacted," she does not cite any OSHA regulation allegedly violated by Aurora. (*Id*.) General references to trade publications, news articles, Illinois regulations, and unrelated products – none of which relate to Aurora pumps, Aurora's knowledge or Aurora's conduct - are not sufficient to carry Plaintiff's burden. "Knowledge" of potential hazards of asbestos in general does not equate to the alleged requisite knowledge that Aurora knew or should have known that <u>its product</u>, containing encapsulated, non-friable asbestos, posed a substantial risk of harm such that it acted with malice.

Finally, contrary to Plaintiff's arguments, the testimony of Aurora's corporate representatives demonstrates that at the time Aurora did not believe that its product posed a health hazard or any substantial risk. Starke testified "there was not a health hazard because of the encapsulation of the gaskets and the lubrication in the packing." (Doc. 331-10 at 35-36.) Nothing in Plaintiff's brief meets the extremely high standard required in North Carolina to permit a punitive damages claim to proceed to a jury. *See Finch v.*

8

*BASF Catalysts LLC*, No. 1:16-CV-1077, 8/16/18 Mem. Opinion & Order at 11-13; N.C. Gen. Stat. §1D-15(a).

Plaintiff has presented no evidence of malice, or willful and wanton conduct in disregard to Whitehead's rights and Plaintiff's claim for punitive damages must be dismissed as a matter of law.

## IV. PLAINTIFF'S FAILURE TO WARN CLAIM SHOULD BE DISMISSED

Plaintiff must prove that Aurora knew or should have known <u>its product</u>, pumps using components with encapsulated asbestos, posed a substantial risk of harm when it left its control and "that the manufacturer or seller acted unreasonably in failing to provide such warning or instruction." N.C. Gen. Stat § 99B-5(a)(1). Plaintiff's "evidence" that asbestos fibers themselves were potentially a known hazard is irrelevant, and Plaintiff's other evidence, completely unrelated to Aurora, demonstrates that there was no such knowledge regarding its product. Nor can Plaintiff salvage this claim by citing to information related to asbestos insulation. Aurora did not provide insulation products. Draughan even testified that Aurora pumps did not have insulation. (Doc. 331-4 at 57) Also, contrary to Plaintiff's repeated arguments about replacement parts, there is no evidence that Aurora supplied asbestos-containing replacement parts to the Brewery. Plaintiff has no proof that Aurora departed from any industry standard of care, or acted unreasonably in light of the fact that its pumps were present at a major industrial facility (the largest brewery in the world) which controlled the work practices of its own employees and, as an employer, was obligated under OSHA to ensure that its employees

9

were not exposed to asbestos in excess of applicable limits. See 29 CFR § 1910.1001 (1976).

North Carolina also requires proof that an adequate warning would have caused Whitehead to change his behavior. *See Edwards v. ATRO SpA,* 891 F. Supp. 1074 (E.D.N.C. 1995). Plaintiff does not address this element: She offers no evidence of what would constitute an "adequate" warning or how it would have made a difference for Mr. Whitehead. As in *Edwards,* "the inference that an adequate warning would have resulted in a change of behavior is the product of speculation from the record; the court cannot permit a question to go to the jury upon mere speculation of proximate cause." *Id.* at 1078. Plaintiff also has no evidence that a warning, if given, would have changed Whitehead's conduct. Accordingly, the failure to warn claim cannot proceed under North Carolina law.

Plaintiff's Brief does not even address § 99B-5 but instead tries to argue a claim pursuant to *Air & Liquid Sys. Corp v. DeVries*, 139 S.Ct. 986 (2019), which has no application to the asserted cause of action under North Carolina's Products Liability statute. Moreover, *DeVries* rested in part on maritime law's "special solicitude for the welfare" of sailors, a consideration not present here. *DeVries* is also inapplicable because it imposed a duty where the product <u>required</u> an asbestos-containing part. *Id.* at 995-96. There is no evidence that Aurora required asbestos-containing parts in any pump at the Brewery. Finally, there is no evidence that Aurora sold asbestos-containing replacement parts to which Whitehead was exposed.

10

Plaintiff cannot establish a duty to warn under North Carolina law and her failure to warn claim fails under N.C. Gen. Stat. § 99B-5 and must be dismissed.

## CONCLUSION

For the reasons set forth above, The Aurora Pump Company respectfully requests that the Court enter an order granting its motion for summary judgment and dismissing it from this case.

Dated this 29th day of April, 2020

> WOMBLE BOND DICKINSON (US) LLP
>
> By: /s/ *M. Elizabeth O'Neill*
> M. Elizabeth O'Neill (NC Bar No. 50338)
> Kimberly Sullivan (NC Bar No. 23480)
> 301 South College Street, Suite 3500
> Charlotte, NC 28202
> Elizabeth.ONeill@wbd-us.com
> Kimberly.Sullivan@wbd-us.com
> WBD.SCASBESTOS@wbd-us.com
> Telephone: (704) 331-350-6310
> Telephone: (704) 444-2329
> Fax: (704) 331-4955
>
> *Attorneys for Defendant*
> *The Aurora Pump Company*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.3(d), I hereby certify that, according to the word count function of Microsoft Word 2010, this brief contains fewer than 3,125 words. This includes the body of the brief, headings, and footnotes, excluding case caption, any index, table of contents, table of authorities, signature block or required certificates.

*/s/ M. Elizabeth O'Neill*
M. Elizabeth O'Neill

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on this day, I electronically filed the foregoing *Reply Brief of Defendant The Aurora Pump Company in Support of Motion for Summary Judgment* with the Clerk of the United States District Court for the Middle District of North Carolina using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated this 29th day of April, 2020

WOMBLE BOND DICKINSON (US) LLP

By: /s/ *M. Elizabeth O'Neill*
    M. Elizabeth O'Neill